## HICKS, LYTLE & CO. v. McGEHEE ET AL.

INSURANCE:   *Right to abandon property to insurance company.*
   A policy of insurance is only a contract of indemnity against actual loss;
   and the consignee of goods damaged in transit, has no right to
   abandon them to the insurance company and claim the whole insur-
   ance, except in case of total loss, or of such serious damage as to render
   them unmarketable.

APPEAL from *White* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

*J. W. House,* for appellant:

The court erred in not allowing proof that cotton was
higher in price at the time of the sale, at Memphis, and
that cotton of the same grade, etc., usually brought more
in New Orleans than in Memphis.   This tended to show
bad faith, and, taken in connection with plaintiff's suspen-
sion shortly afterwards, was a circumstance tending to
show fraud.

Plaintiff should have collected $55 a bale from the in-
surance company.   The insurance company was respon-
sible for that sum, or the value of the cotton at the time of
shipment.   *2 Am. Dec., p. 247; Parsons' Merc. Law, 485,
note 3 and p. 408 to 412, and notes; 3 Kent, to p. 361–425,
230–1–2–4 ank 417.*

*U. M. Rose,* for appellees:

Unless the goods were damaged to the extent of at least
one-half their value, the insured could not abandon them
to the underwriter, but would have to accept the actual
amount of the loss.   *Phillips on Ins., sec. 1535; Smith's
Merc. Law, 3d ed., p. 474, note c.*

SMITH, J.   McGehee, Snowden & Violett, cotton factors, of New Orleans, sued Hicks, Lytle & Co., who were merchants trading at Searcy, in this State, for a small balance due upon mutual accounts.   The defense was that Hicks, Lytle & Co. had shipped to the plaintiffs, on the steamer Belle of Texas, twelve bales of cotton; that said shipment was covered by an open policy of insurance held by the plaintiffs, by which the cotton was insured at the rate of $55 per bale; that while the cotton was in transit the guards of the steamer were broken off, and the cotton precipitated into the river, from which it was rescued in a damaged condition; and it was claimed that the plaintiffs should have abandoned the cotton to the insurance company, and have collected the full insurance.

The evidence shows that the cotton was only slightly damaged by the accident; that it arrived in New Orleans in one month after the date of shipment, where it was identified by its marks, was sent to a pickery, and was there overhauled and rendered merchantable, by removing the bagging in which it was originally wrapped, and some of the outside layers of cotton, which were damp, the insurance company paying for replacing the bagging, and for the difference in the weight of the cotton; that it was then put upon the market and brought a fair price, which was placed to the credit of the defendants, together with the amount collected as damages from the insurance company.   The cause was submitted to a jury, under appropriate instructions, and their verdict was for the plaintiffs.

We have no hesitation in saying that the judgment upon the whole record is right and ought to stand.   A policy of insurance is only a contract of indemnity against actual loss.   The defendants, it appears, were made whole.   Their consignees did all that it was in their power to do, if the

cotton had been their own. They had no right to aban-
don it, as in the case of a total loss, or in case of such seri-
ous damage as to render the cotton unmarketable.

There was proof tending to show that the usual transit
from Searcy to New Orleans occupies from five to seven
days, and that the market had·depreciated between the
time of consignment and arrival of the cotton. The insur-
ance policy is not copied in the transcript, so that we are
unable to say what its precise terms were. In the absence
of proof, we will not infer that it contained any stipula-
tions of guaranty against loss by delay in transportation.

Affirmed.